IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SONIA ELISA E.,

               Plaintiff,

        v.                             Civil Action No.
                                               3:19-CV-0476 (DEP)

ANDREW M. SAUL, Commissioner of
Social Security,[1]

               Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

LEGAL AID SOCIETY OF          ELIZABETH V. KRUPER, ESQ.
 MID-NEW YORK
221 South Warren Street
Suite 310
Syracuse, New York 13202

FOR DEFENDANT

HON. GRANT C. JAQUITH        AMY BLAND, ESQ.
United States Attorney          Special Assistant U.S. Attorneys
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

_____

[1]     Plaintiff's complaint named Nancy A. Berryhill, in her capacity as the Acting Commissioner of Social Security, as the defendant. On June 4, 2019, Andrew M. Saul took office as Social Security Commissioner. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2] Oral argument was heard in connection with those motions on July 1, 2020, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is

---

[2] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:     July 8, 2020
           Syracuse, NY

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
SONIA ELISA E.,

                          Plaintiff,

vs.                             3:19-CV-476

ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY,


                          Defendant.
-------------------------------------------x

        Transcript of a **Decision** held during a

Telephone Conference on July 1, 2020, the HONORABLE

DAVID E. PEEBLES, United States Magistrate Judge,

Presiding.

                A P P E A R A N C E S

                   (By Telephone)

For Plaintiff:       LEGAL AID SOCIETY OF MID-NEW YORK
                     221 South Warren Street
                     Suite 310
                     Syracuse, New York  13202
                       BY:  ELIZABETH V. KRUPER, ESQ.

For Defendant:       SOCIAL SECURITY ADMINISTRATION
                     Office of the General Counsel
                     JFK Federal Building, Room 625
                     15 New Sudbury Street
                     Boston, Massachusetts 02203
                       BY:  AMY BLAND, ESQ.


            *Jodi L. Hibbard, RPR, CSR, CRR*
          *Official United States Court Reporter*
               *100 South Clinton Street*
             *Syracuse, New York  13261-7367*
                    *(315) 234-8547*

1           (The Court and counsel present by telephone.)

2           THE COURT:  Let me begin by thanking both counsel

3       for excellent written and oral presentations, I have enjoyed

4       working with both of you.

5           Plaintiff has commenced this proceeding pursuant to

6       42 United States Code Sections 405(g) and 1383(c)(3) to

7       challenge a determination by the Commissioner of Social

8       Security denying plaintiff's application for benefits and

9       finding that she was not disabled at the relevant times.

10          The background is as follows:  Plaintiff was born

11      in September of 1975 and is currently 44 years of age.  She

12      was 40 years old at the time of the alleged onset of her

13      disability on March 1, 2016.  Plaintiff stands 5 foot 1 inch

14      in height and weighs between 150 and 205 pounds at various

15      points in the record.  She has apparently undergone bariatric

16      surgery.  Plaintiff has a 12th grade education and attended

17      regular classes while in school.  She is right-handed.

18      Plaintiff is separated.  She has three children who are now

19      approximately 14, 21, and 23 years of age.  She also has a

20      boyfriend who she met online.  She has 50 percent custody of

21      her youngest son.  Plaintiff resides in an apartment in

22      Norwich, New York.  She has no driver's license and relies on

23      friends, Catholic Charities, or A&D Cab for transportation,

24      she does not use public transportation such as buses.

25          Plaintiff worked until November of 2015.  She quit

1    her position at the time after an issue with her manager.

2    Over time, she has held various positions, including as a

3    kennel worker, a worker in her Off-Track Betting facility, a

4    cashier in various grocery and convenience store settings,

5    and an assembler in a manufacturing facility.  She lost a job

6    in April of 2014 based on poor performance.  Her longest

7    period of employment was between 2002 and 2004 in the

8    Polkville store.  She did not work between 2005 and 2007 as a

9    result of her pregnancy and giving birth to her son.  She

10   also did not work from 2010 to 2011 when she was

11   self-medicating with alcohol.

12          Plaintiff has a significant history of sexual abuse

13   and that and other stressors have caused her to suffer mental

14   impairments that have been variously diagnosed including as

15   OCD, or obsessive compulsive disorder, post-traumatic stress

16   disorder, or PTSD, major depressive disorder, MDD,

17   generalized anxiety disorder and bipolar disorder, borderline

18   personality disorder, adjustment disorder with depressed

19   mood, and alcohol abuse.  She apparently has been abstinent

20   since February of 2016.

21          Plaintiff has been hospitalized on several

22   occasions including in the Bassett Medical Center emergency

23   room in November 2015, Binghamton General Hospital in

24   December 2015, again Binghamton General Hospital in

25   February 2016, Conifer Park, she underwent treatment there in

1   July of 2015, and New Horizons where she attended weekly

2   sessions between March and September of 2016.  In June of

3   2016, she apparently made plans to overdose.  That is

4   reflected in page 827 of the administrative transcript.

5   Plaintiff has treated with psychiatrist Dr. Nickolas -- the

6   records reflect that it might be T-o-g-l-a-s, we are going to

7   refer to Dr. Nickolas Toglas as Togias because that is the

8   way it appears in the administrative law judge's decision.

9   She has treated with Dr. Togias since June of 2016 and sees

10  him approximately every two months.  She also treats with

11  LCSW Mary Ann Rason who she sees weekly.  She also attends

12  weekly group sessions entitled Seeking Safety.  Plaintiff

13  is -- her general physical needs are taken care of by

14  Physician's Assistant Erica Hill.  She also at a time

15  underwent treatment at Chenango Behavioral Health with

16  another therapist, Kelly Hunter.

17          Plaintiff has been prescribed various medications

18  over time, including Effexor, Seroquel, Synthroid, trazodone,

19  Prozac, hydroxyzine, lithium, prazosin, Ravea, Estoril,

20  Depakote, and Latuda.

21          In terms of activities of daily living, at various

22  points in the record, including at 46 to 47 and 443, there is

23  indication that she can dress, shower, groom, cook, she shops

24  twice a week, she can do dishes, laundry, can vacuum, can

25  sweep, dust, clean, watches television, enjoys writing, can

1   go on social media and can FaceTime, visit friends.  She has

2   a relationship with a boyfriend of some length.  She has

3   expressed a desire to do volunteer work.  She plays games

4   with her son, she plays games on her phone, and in 2017 drove

5   to and back from Florida.

6          Procedurally, plaintiff applied for Title II and

7   Title XVI benefits under the Social Security Act on

8   September 10, 2015.  In that application, she alleged an

9   onset date of October 1, 2011, that was subsequently amended

10  to March 1, 2016.  In support of her application, she claims

11  disability based on PTSD, major depressive disorder, and

12  generalized anxiety disorder.  That appears at page 212 of

13  the administrative transcript.

14         A hearing was conducted on April 16, 2018, by

15  Administrative Law Judge, or ALJ, Mary Leary to address

16  plaintiff's application for benefits.  On July 13, 2018, ALJ

17  Leary issued an unfavorable decision.  That became a final

18  determination of the agency on March 18, 2019, when the

19  Social Security Administration Appeals Council denied

20  plaintiff's request for review.  This action was commenced on

21  April 23, 2019, and is timely.

22         In her decision, ALJ Leary applied the familiar

23  five-step sequential test for determining disability.  She

24  first found that plaintiff is insured or was insured through

25  June 30, 2018.

1    At step one of the sequential analysis, she found

2    that plaintiff had not engaged in substantial gainful

3    activity since March 1, 2016.

4    At step two, ALJ Leary concluded that plaintiff

5    does suffer from impairments that impose more than minimal

6    limitations on her ability to perform basic work functions,

7    including alcohol use, borderline personality disorder,

8    adjustment disorder with depressed mood, major depressive

9    disorder, PTSD, generalized anxiety disorder, bipolar

10   disorder, and OCD or obsessive compulsive disorder.

11   At step three, ALJ Leary concluded that plaintiff's

12   conditions do not meet or medically equal any of the listed

13   presumptively disabling conditions set forth in the

14   Commissioner's regulations, specifically considering Listings

15   12.04, 12.06, 12.08, and 12.15.  She found in connection with

16   those listings that neither the B nor the C criteria are met

17   in this case.

18   After surveying the record, ALJ Leary concluded

19   that plaintiff retains the residual functional capacity, or

20   RFC, to perform work at all exertional levels with additional

21   nonexertional limitations as follows:  She can understand,

22   remember, and carry out simple instructions consistent with

23   routine unskilled work; she can perform simple decision

24   making related to basic work functions; she can tolerate

25   frequent minor changes within the workplace and she can

1    tolerate occasional contact with coworkers and supervisors,

2    but no contact with the general public, in an occupation

3    where the individual can complete tasks relatively

4    independently, and where social interaction is not a primary

5    job requirement.

6            Applying that RFC at step four, Administrative Law

7    Judge Leary concluded that plaintiff is incapable of

8    performing her past relevant work, which was characterized as

9    a sales clerk, a gambling cashier, and a food sales clerk,

10   all of which were with an SVP of 3 -- I'm sorry, gambling

11   cashier is an SVP of 4.  Sales clerk is in the light

12   category, gambling cashier is sedentary, food sales clerk is

13   light according to the vocational expert.

14           At step five, the administrative law judge

15   concluded based on the testimony of the vocational expert

16   that plaintiff, notwithstanding her impairments, is capable

17   of performing available work in the national economy, and

18   three example positions were cited, including as a stubber,

19   as a spiral binder, and as an automotive detailer, and

20   therefore concluded that plaintiff was not disabled at the

21   relevant times.

22           As you know, my function is limited, the standard

23   that I must apply is extremely deferential.  I must determine

24   whether correct legal principles were applied, and the

25   resulting determination is supported by substantial evidence.

1    Substantial evidence, of course, is defined as such relevant

2    evidence as a reasonable mind might accept as adequate to

3    support a conclusion.  As the Second Circuit noted in *Brault*

4    *v. Social Security Administration*, 683 F.3d 443 from 2012,

5    the standard to be applied is a rigorous standard.  It is far

6    more rigid than the clearly erroneous standard that we are

7    all familiar with.  The Second Circuit also noted that with

8    the substantial evidence standard in place, that means once

9    an ALJ finds facts, they can be rejected only if a reasonable

10   fact finder would have to conclude otherwise.

11           In this case, plaintiff has raised essentially two

12   contentions in support of her challenge to the determination.

13   She challenges the weight of medical evidence afforded by the

14   administrative law judge to the various opinions in the

15   record centering upon the records of treating source

16   Dr. Togias, which is also cosigned by Therapist Rason.  She

17   also challenges the administrative law judge's evaluation of

18   her subjective complaints of symptomology.

19           The task of the administrative law judge begins

20   with formulating the plaintiff's RFC.  A claimant's RFC

21   represents a finding of the range of tasks she is capable of

22   performing notwithstanding the impairments at issue.  An RFC

23   determination is informed by consideration of all relevant

24   medical and other evidence.  When assessing a claimant's RFC,

25   the ALJ must analyze exertional capabilities, which includes

1   such things as the ability to sit, stand, walk, lift, carry,

2   push and pull, as well as nonexertional limitations or

3   impairments, which include of course the mental impairments

4   of the type that are now at issue.  And of course the RFC

5   determination must be supported by substantial evidence in

6   order for the resulting determination to be upheld.

7           The focus of this case is of course on the medical

8   records in evidence, and there are four of those in this

9   case.  The first was cosigned by Dr. Togias and Therapist

10  Rason.  It was given on February 27, 2018 and appears at

11  pages 869 to 871 of the record.  In that medical source

12  statement, plaintiff was found to have marked limitations in

13  carrying out detailed instructions, marked limitations in the

14  ability to make judgments on simple work-related decisions.

15  She was found to have marked limitations in the areas of

16  interacting appropriately with the public and interacting

17  appropriately with supervisors, including accepting

18  instructions and criticism from them, as well as marked

19  limitations in responding appropriately to stress, work

20  pressures in the usual work setting, and responding

21  appropriately to changes in a routine work setting.  She was

22  also found to experience marked limitations in the ability to

23  perform activities within a schedule, maintain regular

24  attendance and be punctual within customary tolerances, and

25  in the ability to complete a normal workday and workweek

1    without interruptions from psychologically-based symptoms and

2    to perform at a consistent pace without an unreasonable

3    number and length of rest periods.  That opinion was assigned

4    little weight by the administrative law judge.

5         A second was from LCSW-R Kelly Hunter given on

6    March 10, 2016 and appearing at pages 447 to 449 of the

7    administrative transcript.  In that statement, Therapist

8    Hunter indicates that plaintiff is very limited in the

9    following areas:  Maintain attention/concentration, interact

10   appropriately with others, maintain socially appropriate

11   behavior without exhibiting behavior extremes, maintain basic

12   standards of personal hygiene and grooming, and appears to

13   be -- appears able to function in a work setting at a

14   consistent pace.

15        The next opinion is given by Dr. Sara Long, it was

16   dated April 12, 2016.  Dr. Long, a psychiatrist, examined the

17   plaintiff on that date, and her report appears at pages 441

18   to 445 of the administrative transcript.  Based upon her

19   examination, Dr. Long issued the following medical source

20   statement:  "No limitations were observed regarding following

21   and understanding simple directions and performing simple

22   tasks.  She was able to maintain attention and concentration

23   and is able to maintain a regular schedule.  Generally, she

24   is able to learn new tasks, perform complex tasks, make

25   appropriate decisions, relate adequately with others, and is

1   capable of adequate stress management.  Ms. E. presents with

2   significant history of sexual abuse, experiencing guilt

3   regarding the other children involved.  She states she has

4   reported those problems to therapists in the past and not --

5   and told not to pursue it.  It was today discussed with

6   Ms. E. that the concern is that this individual not be a

7   current risk to other children.  She might discuss with her

8   therapist the option of making a police report and leaving it

9   to their judgment as to whether they want to confirm that

10  this person is not a current risk and reporting it to the

11  authorities would relieve her of having to carry any feelings

12  of responsibility as then it would be the judgment by the

13  third party as to whether it should be pursued."  She went on

14  to state that the results of the present evaluation appear to

15  be consistent with psychiatric and history of substance abuse

16  problems which may interfere with her ability to function on

17  a regular basis.

18          The last opinion of record is from Dr. T.

19  Inman-Dundon, a state agency consultant.  It appears a couple

20  places in the record as part of the Exhibit 3A and

21  Exhibit 4A.  In his opinion, Dr. Inman-Dundon found that

22  plaintiff was moderately limited in some areas including as

23  follows:  The ability to perform activities within a

24  schedule, maintain regular attendance and be punctual within

25  customary tolerances, the ability to complete a normal

1   workday and workweek without interruptions from

2   psychologically-based symptoms and to perform at a consistent

3   pace without an unreasonable number and length of rest

4   periods.  Also found moderately limited in the ability to

5   accept instructions and respond appropriately to criticisms

6   from supervisors, and the ability to get along with coworkers

7   or peers without distracting them or exhibiting behavioral

8   extremes.  She was rated as moderately limited also in the

9   ability to respond appropriately to changes in the work

10   setting, the ability to be aware of normal hazards and take

11   appropriate precautions, and the ability to set realistic

12   goals or make plans independently of others.  There were not

13   any more serious limitations discerned by Dr. Inman-Dundon.

14          In Dr. Inman-Dundon's mental RFC opinion at page

15   87, he concludes as follows:  It appears that claimant

16   experienced psychiatric decompensation in the context of

17   alcohol abuse.  Currently claimant is abstinent, and appears

18   to be able to sustain simple tasks.  Claimant can perform the

19   basic demands of unskilled work.

20          The -- as I said earlier, Dr. Togias and Therapist

21   Rason's opinions were given little weight.  Therapist

22   Hunter's opinions were given little weight.  Dr. Long's

23   opinion was given significant weight, and Dr. Inman-Dundon's

24   opinion was given great weight, and that is from May of 2016.

25          The focus of plaintiff's argument concerning these

1    opinions is on those of Dr. Togias.  Dr. Togias obviously

2    qualifies as a treating source.  Ordinarily the opinion of a

3    treating physician regarding the nature and severity of an

4    impairment is entitled to considerable deference provided it

5    is supported by medically acceptable clinical and laboratory

6    diagnostic techniques and not inconsistent with other

7    substantial evidence.  If controlling weight is not given to

8    a treating source's opinion, the administrative law judge

9    must apply several factors to determine what degree of weight

10   should be assigned to the opinion.  By regulations, those

11   factors include the length of the treatment relationship and

12   the frequency of examination, the nature and extent of the

13   treatment relationship, the evidence supporting the treating

14   provider's opinion, the degree of consistency between the

15   opinion and the record as a whole, whether the opinion is

16   given by a specialist, and other evidence that has been

17   brought to the attention of the administrative law judge.  20

18   C.F.R. Section 404.1527 and 404 –- 416.927.  And of course

19   when a treating source's opinions are repudiated, the ALJ

20   must provide reasons for the rejection and those reasons must

21   be supported by substantial evidence.

22          In this case, the reasons given for not accepting

23   Dr. Togias' opinions stem from the determination by the

24   administrative law judge that they were not consistent with

25   the treatment notes from both Dr. Togias and Therapist Rason

1    as well as plaintiff's activities of daily living.  It was

2    also noted -- it also is noted that being a check-the-box

3    form, sometimes those opinions of check-the-box forms are

4    given less weight, although there is some narrative in this

5    case.

6         The opinions of Dr. Togias are also inconsistent

7    with those of Dr. Inman-Dundon and Dr. Long.  As I indicated

8    during the oral argument, I recognize the importance of a

9    treating source and the longitudinal knowledge and history

10   that can be provided by a treating source, particularly in a

11   mental health case.  The -- in this case, when I look to

12   what's known as the *Burgess* factors, certain of those factors

13   have been discussed by Administrative Law Judge Leary.

14   Reference is made to Dr. Togias and his specialty as a

15   psychiatrist.  Reference is made to the treatment notes.

16   There is no reference to the length of treatment and

17   frequency, but there is reference to the consistency of the

18   opinion with other medical evidence, and the amount of

19   evidence supporting the opinions.

20        The -- I have reviewed carefully the treatment

21   notes that appear in the record, including those at

22   Exhibit 10F from Physician's Assistant Erica Hall, and 11F

23   and continuing on, from Dr. Togias and Social Worker Rason,

24   and there was another social worker also in there, Karen

25   Grosso.  And it -- as the administrative law judge noted,

1    those treatment records, although they do show some hot

2    spots, they do, for the most part, show a fairly benign

3    psychological and psychiatric status as the administrative

4    law judge noted at page 21.  Many, many of the treatment

5    notes indicate that plaintiff was well-kempt, cooperative,

6    open and talkative, calm, good eye contact, stable mood,

7    euthymic mood, appropriate affect, normal speech, linear

8    thought process, no delusions elicited, intact judgment, good

9    insight, denied any perceptual disturbances, and although

10   there is indication of suicidal ideation or even attempts at

11   times, most of the reports from those physicians of the

12   treating sources indicate no suicidal or homicidal ideation.

13         The -- Dr. Long and Dr. Inman-Dundon's opinions are

14   both contrary to the opinions of Dr. Togias.  A careful

15   review of the notes indicate that while plaintiff's condition

16   was somewhat cyclical, there was not a significant

17   deterioration after those individuals gave their opinions

18   that would require revisiting or minimize the impact of those

19   opinions.

20         So in summary, I don't find that the treating

21   source rule was violated.  I think essentially the *Burgess*

22   factors, the regulatory factors were considered, but even if

23   they were not, as *Estrella* teaches, if the court, after a

24   searching review of the record, finds that the treating

25   source rule was not violated, then the error is harmless and

1   remand is not required.  That is based on *Estrella v.*

2   *Berryhill*, 925 F.3d 90 from 2019 Second Circuit.  In this

3   court one of my colleagues recognized similarly in *Reed v.*

4   *Commissioner of Social Security*, it is 5:16-CV-1134, found at

5   2018 WL 1183382 from the Northern District of New York,

6   March 6, 2018.  It was also noted in *Reed* by Magistrate Judge

7   Carter that it is appropriate to rely on sources such as

8   Dr. Long, Dr. Inman-Dundon, and those opinions can provide

9   substantial evidence sufficient to overcome a treating source

10  opinion.

11        So I conclude, based on all of my review of the

12  record, the opinions of those sources, treatment notes of PA

13  Hill, Dr. Togias, and Rason, Therapist Rason, that no

14  reasonable -- a reasonable fact finder would not have to

15  conclude that the treating source opinions should be

16  accepted, and so I -- and I note that this case is not

17  similar to *Estrella*.  *Estrella* involved a very different

18  situation where the administrative law judge cherrypicked two

19  positive treatment notes, and in light of those and GAF

20  scores and consultative examiner in the face of treatment

21  notes that showed a very different situation for that

22  plaintiff.  So in conclusion I find plaintiff failed to show

23  that no reasonable fact finder could have reached the

24  administrative law judge's conclusions concerning the

25  treating source issue.

1          The second issue raised by the plaintiff concerns

2    the treatment of plaintiff's subjective complaints.

3    Obviously an ALJ must take into account plaintiff's

4    subjective complaints in rendering the five-step disability

5    analysis.  20 C.F.R. Sections 404.1529 and 416.929.  However,

6    when examining the question, the ALJ is not required to

7    blindly accept the subjective testimony of a complainant -- a

8    claimant, and rather, retains discretion to weigh the

9    credibility in light of other evidence in the record.

10         The regulations and the case law provide a two-step

11    analysis to be made when reviewing credibility which is

12    governed by SSR 16-3p.  When assessing credibility and a

13    plaintiff's subjective symptomology, an ALJ must consider

14    certain relevant factors including the claimant's daily

15    activities, the location, duration, frequency, and intensity

16    of any symptoms, any precipitating and aggravating factors,

17    the type, dosage, effectiveness and side effects of any

18    medication taken and other treatment received as well as

19    other measures taken to relieve the symptoms.  There are

20    other factors as well.

21         In this case, the administrative law judge

22    recounted plaintiff's claims at page 18 and concluded that,

23    after careful consideration of the evidence, the undersigned,

24    ALJ Leary, finds that the claimant's medically determinable

25    impairments could reasonably be expected to cause the alleged

1    symptoms.  However, the claimant's statements concerning the

2    intensity, persistence, and limiting effects of the symptoms

3    are not entirely consistent with the medical evidence and

4    other evidence in the record for the reasons explained in

5    this decision.  If the administrative law judge had stopped

6    there, the case law is clear that that would be insufficient

7    to provide meaningful judicial review of the ALJ's thinking.

8    The ALJ, however, went on to discuss treatment notes, the

9    conservative treatment undergone by the plaintiff, her

10   activities of daily living, and the medical evidence in the

11   record.  At page 20, ALJ Leary summarizes, "Overall, the

12   evidence in the record consists primarily of documentation of

13   the claimant's subjective complaints with little in the way

14   of objective findings to support functional limitations of

15   the severity the claimant has alleged.  The claimant received

16   far less treatment than one would expect of someone

17   experiencing pain and limitation of the severity she has

18   reported.  Considering the objective evidence in light of the

19   claimant's self-described activities of daily living, the

20   record as a whole, and the consistency of claimant's

21   statements and testimony, the undersigned finds the claimant

22   can perform work within the limitations described in the

23   residual functional capacity assessment set forth herein."

24        Having reviewed carefully the decision, I find that

25   the SSR 16-3p has been followed and that the explanation

1    given for rejecting plaintiff's claims of symptomology afford

2    the court a basis for meaningful judicial review.  I find

3    that the plaintiff has not demonstrated that no reasonable

4    fact finder could reach the same conclusion that the ALJ

5    reached when considering plaintiff's symptomology.

6              In summary, I find that correct legal principles

7    were applied, and the resulting determination is supported by

8    substantial evidence.  I will therefore grant judgment on the

9    pleadings to the defendant and direct dismissal of

10   plaintiff's complaint.

11             Thank you both again, I hope you stay safe in these

12   interesting times.

13             MS. KRUPER:  Thank you.

14             MS. BLAND:  Thank you, your Honor, everyone stay

15   safe.

16                  (Proceedings Adjourned, 2:52 p.m.)

17

18

19

20

21

22

23

24

25

1              CERTIFICATE OF OFFICIAL REPORTER

2

3

4        I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

5   Official Realtime Court Reporter, in and for the

6   United States District Court for the Northern

7   District of New York, DO HEREBY CERTIFY that

8   pursuant to Section 753, Title 28, United States

9   Code, that the foregoing is a true and correct

10   transcript of the stenographically reported

11   proceedings held in the above-entitled matter and

12   that the transcript page format is in conformance

13   with the regulations of the Judicial Conference of

14   the United States.

15

16                    Dated this 6th day of July, 2020.

17

18

19                    /S/ JODI L. HIBBARD

20                    JODI L. HIBBARD, RPR, CRR, CSR
                      Official U.S. Court Reporter
21

22

23

24

25